UNITED STATES DISTRICT COURT
DISTRICT OF PUERTO RICO

WILLIAM L. BONNELL COMPANY, INC.,

Plaintiff,

v.

MANUEL GÁNDARA, et al.,

Defendants.

Civil No. 03-1551 (JAF)

**O R D E R**

On May 21, 2003, Plaintiff, the William L. Bonnell Company, Inc., instituted an action in diversity against Defendants, Manuel E. Gándara, Yvette S. Souffront, and their conjugal partnership, to collect an alleged debt of $370,801.33. (Docket No. 1.) The parties settled this case by an agreement on May 12, 2005 (Docket Nos. 41; 42), and we dismissed the complaint in accordance with the terms of the settlement agreement (Docket No. 43).

On November 3, 2009, Plaintiff moved to enforce the settlement agreement, alleging Defendants' breach of the settlement agreement. (Docket No. 50.) After one month passed without objection from Defendants, we granted the motion. (Docket No. 51.) Defendants then petitioned for reconsideration of that order, contending that there is no enforceable final judgment in this case and that Plaintiff should commence a new suit. (Docket No. 52.) We granted reconsideration on December 15. (Docket No. 54.) Plaintiff now moves for reconsideration of

Civil No. 03-1551 (JAF) -2-

this latest order (Docket No. 55), and Defendants oppose (Docket No. 56).[1]  On March 29, 2010, we ordered both parties to specify their respective obligations under their settlement agreement dated May 10, 2005, and their performance of such obligations. (Docket No. 57.) The parties submitted affidavits pursuant to that order. (Docket Nos. 58; 61.) We then ordered Plaintiff to state by affidavit whether it had unilaterally suspended a purchasing arrangement for aluminum, under which Defendants were to satisfy an obligation of $370,802 due under the settlement agreement. (Docket No. 62.) Plaintiff submitted that affidavit on May 3. (Docket No. 65.)

When a federal district court dismisses a case pursuant to a settlement agreement between the parties under Federal Rule of Civil Procedure 41(a)(1)(A)(ii), the court retains ancillary jurisdiction to enforce the agreement only if "the parties either have agreed to incorporate the terms of the settlement into the dismissal order or have executed a stipulation authorizing the court to retain jurisdiction over the implementation of the settlement." Municipality of San Juan v. Rullan, 318 F.3d 26, 27 (1st Cir. 2003). If a party moves to enforce the settlement agreement, state law controls where the underlying dispute is a case in diversity. See Fid. & Guar. Ins. Co. v. Star Equip. Corp., 541 F.3d 1, 5 (1st Cir. 2008).

In the case before us, we ordered dismissal pursuant to the terms of the settlement agreement (Docket No. 43), which provided for our retention of supplemental jurisdiction to enforce its terms (Docket No. 52-2 at 3). Because this case commenced under our diversity

---

[1] Any party may move the court to alter or amend a judgment within twenty-eight days of its entry. Fed. R. Civ. P. 59(e). "Motions under Rule 59(e) must either clearly establish a manifest error of law or must present newly discovered evidence." FDIC v. World Univ. Inc., 978 F.2d 10, 16 (1st Cir. 1992).

Civil No. 03-1551 (JAF)                                                                                            -3-

jurisdiction (Docket No. 1), we look to Puerto Rico law to interpret the terms of the settlement agreement and the parties' compliance therewith.² See Fid. & Guar. Ins. Co., 541 F.3d at 5.

The civil law in Puerto Rico provides for compromise, a contract by which the parties may terminate a pending lawsuit. 31 L.P.R.A. § 4821 (1990) (P.R. Civ. Code art. 1709 (1930)). Every valid contract must be formed by the consent of the parties; have "[a] definite object which may be the subject of the contract"; and have a determinable cause for the obligation. § 3391 (Civ. Code art. 1213). The literal terms of a contract control when such terms are clear and consistent with the apparent intention of the parties. § 3471 (Civ. Code art. 1233). Furthermore, the doctrine of pacta sunt servanda generally holds parties to strict compliance with the terms of their bargain. López-Morales v. Hosp. Hermanos Meléndez, Inc., 460 F.Supp.2d 288, 291 (D.P.R. 2006) (citing Casera Foods, Inc. v. Puerto Rico, 8 P.R. Offic. Trans. 914, 919 (1979)); accord 31 L.P.R.A. § 2994 (Civ. Code art. 1044). Nevertheless, the civil law implies a clause of rebus sic stantibus into

---

² For cases in diversity, we apply Puerto Rico's choice-of-law rule to find the governing body of law. Allstate Ins. Co. v. Occidental Int'l, Inc., 140 F.3d 1, 3 (1st Cir. 1998). Puerto Rico adopts the "dominant contacts" approach to determine the rule of decision in contractual disputes. Green Giant Co. v. Trib. Super., 4 P.R. Offic. Trans. 682 (1975) (citing Restatement (Second) of Conflict of Laws § 188 (1971)); accord Servicios Comerciales Andinos, S.A. v. Gen. Elec. del Caribe, Inc., 145 F.3d 463, 478-79 (1st Cir. 1998). Under this rule, when the parties fail to specify a choice of law, the court considers a non-exhaustive list of factors: "(a) the place of contracting, (b) the place of negotiation of the contract, (c) the place of performance, (d) the location of the subject matter of the contract, and (e) the domicile, residence, nationality, place of incorporation and place of business of the parties." Restatement (Second) of Conflict of Laws § 188(2).
In the case at hand, the settlement agreement states that it was made in San Juan, Puerto Rico (Docket No. 52-2); the parties concluded the agreement to resolve a dispute before this court in San Juan (id.); and Defendants are Puerto Rican domiciliaries (Docket Nos. 1; 13). Although Plaintiff is a Georgia corporation with a principal place of business in the same state (Docket No. 1), Plaintiff's citizenship does not outweigh the other factors present. We, therefore, apply the Civil Code of Puerto Rico to assess the instant dispute.

Civil No. 03-1551 (JAF) -4-

every contract to permit relief in extraordinary situations.[3] López-Morales, 460 F. Supp. 2d at 291; accord Casera Foods, 8 P.R. Offic. Trans. at 919. This implicit clause authorizes the court "to adjust the debtor's obligation or rescind the contract when unforeseeable circumstances render strict compliance with the contract unfair." López-Morales, 460 F. Supp. 2d at 291. For rebus sic stantibus to apply, (1) the contract must be executory, meaning that performance is not rendered until some time after the formation of the contract; (2) the change in circumstances arises after the parties entered into the agreement; (3) the change is both unforeseeable and of indefinite duration; (4) the change results in "an extraordinary difficulty or aggravation of the conditions surrounding the concession to be made by the debtor, so that it becomes significantly more costly for him to comply with his obligation;" and (5) the interested party must petition the court for relief. Id. at 292. However, the rule does not apply to contracts that are "fundamentally speculative in nature." Id.

In the present dispute, Defendants allegedly executed a personal guarantee to secure the debts owed Plaintiff by Export National, Inc. ("Export National"). (Docket No. 1.) To end the instant case, the parties stipulated to a mechanism for repayment of $370,802 to Plaintiff, whereby Export National undertook to purchase a certain percentage of its aluminum requirements from Plaintiff at a fixed premium per pound. (Docket No. 52-2.) In exchange, Plaintiff agreed to accept $250,000 in repayment as satisfaction for its claim against Defendants. (Id.) Plaintiff

---

[3] But see St. Charles Ventures, L.L.C. v. Albertsons, Inc., 265 F. Supp. 2d 682, 697-98 (E.D. La. 2003) (noting that courts in France and Louisiana refuse to adopt analogous principle of "l'imprévision" and insist on strict adherence to contract). The comparable rule to rebus sic stantibus at common law is the discharge of duty by supervening impracticability. See Restatement (Second) of Contracts § 261 (1981).

Civil No. 03-1551 (JAF) -5-

agreed it would dismiss this case once it received payments totaling that amount. (Docket No. 52-2.) After Export National emerged from Chapter 11 reorganization under the Bankruptcy Code, Hurricane Technological Systems, Inc. ("HTS") became the successor to Export National's interests and obligations under the settlement. (Docket Nos. 58; 61-2.)

The parties agree that HTS tendered at least $231,477.37 in payments to Plaintiff under the purchasing mechanism. (Docket Nos. 58; 61-2.) The parties also concur that performance under the mechanism ended sometime between December 2008 and January 2009. (Id.) Defendants contend that Plaintiff defaulted on its obligation in January 2009 by suspending the sale of aluminum necessary to HTS' performance under the settlement. (Docket No. 61-2.) According to Defendants, this abrupt termination compelled HTS to find a new supplier and to incur losses that sent HTS into bankruptcy.[4] (Id.) In response, Plaintiff asserts that it warned HTS in late 2007 that it was "terminating its relationship with all Asia extrusion partners, including the extruder that was supplying HTS." (Docket No. 65-2 at 2.) Plaintiff states that it sent this notice at least six months before the cessation of supplies and that it assured HTS of Plaintiff's support during the transition. (Id.) Plaintiff adds that HTS failed to adequately secure its purchases by payment bonds toward the end of 2008, as contemplated under the agreement. (Id.)

---

[4] We note that the Bankruptcy Code imposes an automatic stay on actions for debt collection against debtors in bankruptcy unless the bankruptcy judge orders relief from that stay. See 11 U.S.C. § 362(a), (d). We have no evidence of either the existence of an automatic stay or relief from such a stay.

Civil No. 03-1551 (JAF) -6-

We begin by construing the parties' intentions. The object of the settlement agreement at issue is the voluntary satisfaction of a monetary obligation by HTS through a purchasing mechanism for aluminum. (See Docket No. 52-2.) The cause for this contractual obligation is the voluntary cessation of litigation by Plaintiff against Defendants. The settlement agreement also allows Defendants to avoid admitting their legal liability for the alleged debt. HTS' purchase of its aluminum requirements from Plaintiff is integral to the arrangement. Thus, Plaintiff has an implicit obligation to accept purchase orders placed by HTS, as long as the offer conforms to the contractual terms. Moreover, the availability of aluminum supplies in such quantities as to meet HTS' requirements is a fundamental assumption underlying the contract.

We next consider whether we should hold the parties to their bargain. We construe the parties' accounts of the suspension of aluminum sales as cross-petitions for relief under rebus sic stantibus. See López-Morales, 460 F. Supp. 2d at 292. Applying that principle, we note that the instant agreement is executory in nature insofar as it obliges Plaintiff and HTS to engage in aluminum sales for the foreseeable future until a certain amount is met. According to the parties' submissions, the disruption to aluminum supplies occurred after the conclusion of the settlement agreement and was both unforeseen and of indefinite duration. See id. (finding that rebus sic stantibus cannot apply where evidence showed that parties contemplated contingency at issue during settlement negotiations). This shortage in supplies clearly imposes extreme hardship on both parties, as it renders nearly impossible the performance of their respective duties under the contract. The parties do not accuse each other of deceit in the disruption to aluminum shipments from Asia. Finally, the settlement agreement is not speculative, as it relates to tangible goods that

Civil No. 03-1551 (JAF)                                                                                           -7-

are ordinarily available from mining operations abroad.  Accordingly, we find sufficient grounds to reform the settlement agreement under <u>rebus sic stantibus</u> to absolve both parties of their mutual obligations relating to aluminum sales.  <u>See</u> <u>id.</u>

Striking the clauses pertaining to aluminum, the resulting contract contains a penalty clause that Plaintiff may invoke for HTS' failure to make payments.  (<u>See</u> Docket No. 52-2 at 5.)  Under this clause, Plaintiff has the option "to reopen the Litigation or to file a new lawsuit . . . to recover the balance owed."  (<u>Id.</u>)  HTS has ceased to purchase aluminum from Plaintiff and has not made payments to Plaintiff by any other means.  (<u>See</u> Docket Nos. 58; 61-2; 65-2.)  Plaintiff invokes the penalty clause to move to reopen the case.[5]  (Docket Nos. 48; 55.)  We, therefore, vacate our previous denial of Plaintiff's request to reopen the case (Docket No. 54).

In view of the foregoing, we hereby **GRANT** Plaintiff's motion for reconsideration and **AMEND** our order dated December 15, 2009 (Docket No. 54), to **reopen the present case**.  We **ORDER** the parties to appear before this court on **June 21, 2010, at 9:30 A.M.,** for a bench trial to determine Defendants' remaining debt to Plaintiff.

**IT IS SO ORDERED**.

San Juan, Puerto Rico, this 20th day of May, 2010.

                                                    s/ José Antonio Fusté
                                                    JOSE ANTONIO FUSTE
                                                    Chief U.S. District Judge

---

[5] When a party breaches a bilateral contract, the civil law provides the remedy of "resolution," whereby the non-breaching party may suspend performance of its obligations and demand either specific performance or rescission.  <u>See</u> 31 L.P.R.A. § 3052 (Civ. Code art. 1077); <u>Dopp v. Pritzker</u>, 38 F.3d 1239, 1243-44 (1st Cir. 1994).  Because we reform the settlement agreement under <u>rebus sic stantibus</u>, we have no occasion to pass judgment on the parties' recriminations pertaining to breach of contract.  (<u>See</u> Docket Nos. 58; 61-2; 65-2.)